ANNA HARRISON, APPELLANT, V. CARGILL COMMISSION COMPANY, APPELLEE.

FILED FEBRUARY 21, 1934. No. 28986.

*Smith & Schall, Gerald M. Vasek* and *Howell & Wright,* for appellant.

*Gaines, McGilton, McLaughlin & Gaines, contra.*

Heard before GOSS, C. J., ROSE and PAINE, JJ., and CHASE and ELDRED, District Judges.

ROSE, J.

This is a proceeding under the workmen's compensation law. William T. Harrison was employee and Cargill Commission Company, a corporation operating a grain elevator near Omaha, was employer. Employee was smothered in grain in his employer's elevator February 17, 1931, as the result of an industrial accident arising out of and in the course of his employment. Anna Harrison, an incompetent person, by her guardian, Harry Heinrickson, plaintiff, filed with the compensation commission a claim for compensation as the dependent widow of the deceased employee. The claim was allowed by the compensation commissioner, and the employer, defendant, appealed to the district court for Douglas county.

The defenses to the claim for compensation were that

claimant was not the widow of the employee, never having been his lawful wife; that they were not living together at the time of the employee's death, and that she was not then dependent upon him for support.

Upon a trial in the district court the award of the compensation commissioner was vacated and the proceeding dismissed. Claimant, plaintiff, appealed.

It is shown by a preponderance of the evidence that claimant became the common-law wife of the employee prior to the enactment of 1923, providing in effect:

"A valid marriage can be contracted in this state only when the parties have previously obtained a license to marry, and when the marriage has been solemnized by a person authorized by law to solemnize marriages." *Collins v. Hoag & Rollins,* 122 Neb. 805. Laws 1923, ch. 40, Comp. St. 1929, sec. 42-104.

This statute did not invalidate prior common-law marriages. They were previously recognized as valid. Claimant did not abandon her husband or seek a divorce or agree to a separation or forfeit her rights as a wife. The marriage relation between her and her husband was first severed when the latter lost his life in the service of his employer. In this view of the law she was his lawful wife.

Was claimant "living" with her husband at the time of his death within the meaning of the workmen's compensation law? Was she wholly dependent upon him for support? The answers to these questions depend on the law and the facts. The statute provides:

"The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee: (a) A wife upon a husband with whom she is living at the time of his death." Comp. St. 1929, sec. 48-124.

To avoid the payment of compensation, defendant, the employer, contends that claimant was not living with her husband at the time of his death, because she was then living apart from him in an asylum for the insane, where

she had been confined for years, and that she was not dependent upon him for support, because the public supported her where she was confined, without any aid whatever from her husband. These propositions are skilfully presented, but they rest on technical construction of statutory language or on literal legislative terms. It has often been held that the workmen's compensation law should be liberally construed to give effect to its purposes, one of them being:

"An outstanding purpose of the workmen's compensation law is to shift from the employee to modern industry the burden of economic waste or loss 'arising out of and in the course of his employment' as a result of his injury or death." *Tralle v. Hartman Furniture & Carpet Co.*, 116 Neb. 418.

This purpose would be defeated to some extent at least, if public support of a wife in an asylum would release her husband from his legal obligation to support her. By the use of the expression "with whom she is living," as it appears in the workmen's compensation law, the legislature did not intend to deny compensation to a widow who was dependent upon her husband for support, merely because she was temporarily absent from him at the time of his death, where there had been no estrangement, or divorce, or purpose to separate, or agreement to live apart, or wrong-doing, or violation of martial relations or duties. Without losing the right to the support of a husband, the wife, with his consent, may properly be away from home for long periods of time, when justified by circumstances. A faithful wife may retain her marital rights though involuntarily separated from her husband for a time. In such contingencies they are still "living together" in the sense contemplated by the legislature and in the common understanding of those words.

The duty of a husband to support his wife is imposed by law. *Acton v. Schoenauer*, 121 Neb. 62. Claimant was committed to a hospital for the insane January 19, 1929. By process of law she was detained there continuously

except at intervals when she was temporarily paroled to her husband. She was in the hospital at the time of his death, and was received there as employee's wife. Her husband maintained a home for her. To his home she had returned when paroled. She was permitted to attend his funeral. She was incapable mentally of agreeing to a separation or of waiving her rights as a wife. Insanity was not a ground for a divorce. If she had been restored to mental competency at any time, her place of abode would have been her husband's home, with her marital rights unimpaired, including support. The word "living" was not limited by the legislature to physical presence in the home, but extended to proper or unavoidable absences during the existence of the marriage relation. In this sense claimant was not only living with her husband, but he was morally and legally bound to support her at the time he was fatally injured in an industrial accident. She was then dependent upon him for support within the meaning of the workmen's compensation law. Mere violation of the duty of the husband to pay for the support of his wife, if she retains her right thereto, does not prevent recovery for compensation. *Parson v. Murphy,* 101 Neb. 542. These views have often been announced in no uncertain terms. In construing statutory provisions like those under consideration the supreme court of Wisconsin said:

"Proof of total dependency is dispensed with under the statute where the husband and wife are 'living together' at the time of the death of the injured employee. It seems, therefore, quite obvious that the legislature intended by the use of the words to include all cases where there is no legal or actual severance of the marital relation, though there may be physical separation of the parties by time and distance. The 'living together' contemplated by the statute, we think, was intended to cover cases where no break in the marriage relation existed, and therefore physical dwelling together is not necessary, in order to bring the parties within the words 'living together.' There

must be a legal separation or an actual separation in the nature of an estrangement, else there is a 'living together' within the meaning of the statute. This seems to be the reasonable and practical construction of the law, and the one which we think the legislature intended. If the law should receive the construction that there must be physical dwelling together in order to satisfy the statute, it is plain that the purpose of the law would in many cases be defeated, because in many cases the spouse may be absent from home for long intervals, although there is no break in the marriage relation, no estrangement, and no intent to separate or sever the existing relation or change the relations or obligations created by the marriage contract." *Northwestern Iron Co. v. Industrial Commission of Wisconsin,* 154 Wis. 97. See, also, *T. J. Moss Tie Co. v. Tanner,* 44 Fed. (2d) 928; *Pykosz v. Koehler & Streng Co.,* 105 Pa. Super. Ct. 605; *Jones v. George R. Cooke Co.,* 250 Mich. 460; *Conway v. County of Todd,* 187 Minn. 223; *Woods v. American Coal & Ice Co.,* 25 S. W. (2d) (Mo. App.) 144; *Birmingham Slag Co. v. Johnson,* 214 Ala. 131.

A wife who has not forfeited or otherwise lost any marital right may be living with her husband at the time of his death in an industrial accident, within the meaning of the workmen's compensation law, though then involuntarily confined in an asylum for the insane. The following conclusion was reached in a recent case:

"In a proceeding under the workmen's compensation act, evidence held to show that the deceased employee's widow, whose mind had been impaired for years and who had spent much time in various hospitals but was living temporarily with a son in another city when her husband was killed, was living with her husband at the time of his death, within St. 1917, sec. 2394-10, subd. 3." *Belle City Malleable Iron Co. v. Industrial Commission,* 174 N. W. 899 (170 Wis. 293). See, also, *Kelly v. Hopkins* (1908) 2 Ir. R. 84.

In view of the law and the facts as outlined, plaintiff made a case for compensation. For the specific purpose of

allowing it on the record as it now stands, the judgment of dismissal is reversed and the cause remanded for further proceedings.

REVERSED.