RAY MCKELVEY ET AL., APPELLEES, v. BARTON MILLS, INC., A CORPORATION, APPELLANT.

40 N. W. 2d 407

Filed December 29, 1949. No. 32671.

*W. A. Stewart, Jr.,* and *Cline, Williams & Wright,* for appellant.

*Beatty, Clarke, Murphy & Morgan,* for appellees.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

Yeager, J.

This is an action by Ray McKelvey and Gladys McKelvey, appellees, against Barton Mills, Incorporated, a corporation, appellant, under the workmen's compensation law of the State of Nebraska for the recovery of funeral expenses and workmen's compensation on account of the death of Robert Clyde McKelvey, the adopted son of appellees, while in the employ of the appellant.

The action was first tried to a single judge of the workmen's compensation court where an award of $150 was made for funeral expenses but otherwise compensation was denied.

It was thereafter tried to the full membership of that court where a like award was made for funeral allowance. An award of $500 was made to be paid for the benefit of the Second Injury Fund as provided by section 48-128, R. S. Supp., 1949. This was based on a finding that the deceased left surviving no dependents.

From the award thus made the appellees herein appealed the cause to the district court where it was tried on the pleadings filed therein and the record made in the workmen's compensation court.

The district court found that the deceased was injured in the course of his employment; that he was an unmarried person of the age of 16 years; that appellees were partially dependent on his earnings for support; that they were entitled to benefits under the workmen's compensation law in the amount of $12 a week for 325 weeks; and that they were entitled to $150 for funeral expenses. Judgment was rendered accordingly.

From this judgment the defendant has appealed. As grounds for reversal appellant says that the judgment is not sustained by the evidence; that it is contrary to the evidence; that it is contrary to law; and that the findings of fact made by the district court are not supported by the evidence.

By stipulation the parties have agreed that the deceased

came to his death as the result of an accident occurring while he was engaged as an employee of the appellant, that the death is compensable under the workmen's compensation law, and that his rate of pay at the time of his death was sufficient to have entitled him to the maximum rate allowable for temporary total disability under the workmen's compensation law or $18 a week.

In the light of the stipulation the only questions for determination here are that of whether or not the appellees were at the time of the death of Robert Clyde McKelvey his dependents within the meaning of the workmen's compensation law and if so then to what rate of compensation they are entitled.

Section 48-124, R. S. 1943, contains the definitions of those who are or may be regarded as dependents under the workmen's compensation law. It becomes clear from a reading of this section that parents are not presumed to be dependents of minor children but on the facts they may be found to be dependent. They fall within the class contemplated by the following which is a part of the section: "In all other cases, questions of dependency, in whole or in part, shall be determined in accordance with the fact, as the fact may be at the time of the injury; * * *."

In point of fact the record in this case discloses that Robert Clyde McKelvey was adopted by appellees when he was a baby and that the relation of parents and child was sustained thenceforth. In April 1947 after this boy had reached the age of 16 years and a few weeks before he would have finished the ninth grade he quit school and went to work. It appears that he quit school contrary to the wishes of the parents. It appears that he did not like school. It further appears that he wanted to go to work in order to be of help and assistance to his parents. He worked on the farm operated by his father until May 31, 1947. For this work he received no pay. On May 31, 1947, he went to work for the appellant and worked there one week. For this he was paid $20.67. He gave his

mother $20 of this amount. He then went to work for one Elwood Knauss where he worked for about a month. For this work he received $100. Out of this he contributed $5 to $10 a week for groceries, he gave his mother $17 in cash, and gave his father $5.50 for repairs on the family car. After working for Elwood Knauss and to August 9, 1947, he again worked for his father on the farm. For this he received no pay. On August 9, 1947, he went to work for the appellant as a truck driver. He continued in this employment until his death. His pay for this period was a total of $292.59. After deductions for social security, income tax, and an item of $10 denominated miscellaneous, the net compensation paid for his service was $242.37. This was at a gross rate of approximately $45 a week and a net rate of approximately $37 a week.

The evidence is not as clear as it might be as to contributions made to the parents during the latter period of employment. It is clear that he did give his mother $10.50 on the Saturday before his death and $20 on September 13, 1947. She testified also that he gave her from $5 to $10 every time he got a pay check. She also testified that he furnished groceries of the value of $5 to $10 each week. None of this evidence is controverted. Whether or not the $10.50 or the $20 items were meant to be included in the estimated weekly amounts out of the pay checks is not made clear. On September 6, 1947, he gave his father $20 for a tire and tube for the family car.

Thus it appears that over the period of his continuous employment by the defendant, if plaintiffs' maximum estimate of contributions is to be accepted, he contributed to his parents approximately 44 percent of his gross earnings and approximately 54 percent of the amount actually received. The percentages would be higher if the $10.50 and the $20 given to his mother and the $20 to his father were included.

The circumstances surrounding this family were, as the

evidence discloses, that Ray McKelvey was a tenant farmer. He operated a 200-acre farm. About 175 acres were under cultivation. The chief crops produced appear to have been corn and alfalfa. He had two cows, two horses, and a pony, and no other livestock. He had sufficient old farm equipment for his purposes. It appears he did not have a surplus of cash at the beginning of 1947. He negotiated a loan of $1,500 in order to permit him to carry on his farming operations for the year. His gross income for the year was about $4,100. Gladys McKelvey was in poor health and was in need of an operation. She had had two previous operations which cost about $500. It reasonably appears that appellees could have gotten along without the assistance given by the deceased but that these contributions provided nothing beyond what may be regarded as ordinary necessities and relieved only against self-denial. It further reasonably appears that the deceased made the contributions in recognition of a duty in this respect which it pleased him to assume.

This court said in Kral v. Lincoln Steel Works, 136 Neb. 31, 284 N. W. 761: "Where the evidence shows that parents, with limited means, actually received contributions for their support from the wages of a son now deceased, such fact constitutes evidence strongly tending to establish dependency, and the question of dependency or partial dependency must be determined from the facts in each case."

In Pieters v. Drake-Williams-Mount Co., 142 Neb. 315, 6 N. W. 2d 69, it was said: "Dependency in fact under * * * the workmen's compensation act is not created by contributions made for purposes other than the partial support of the alleged dependent.

"The determination of the fact of partial dependency under * * * the workmen's compensation act must be based first upon contributions made by the employee for the purpose of support of the claimed dependent.

"It is not money contributed, but money contributed

for the purpose of support of the claimant that must be the basis of any claim of partial dependency under said act."

This court has held that where a claim is made under the workmen's compensation law on account of dependency actual as distinguished from mere legal dependency must be shown. Palmer v. Hamer, 133 Neb. 362, 275 N. W. 322; Meyer v. Nielsen Chevrolet Co., 137 Neb. 6, 287 N. W. 849.

"Dependency" and "support" under the workmen's compensation law are not capable of certain definition. The definition and application of these words should not be too severely restricted. If a contribution is made to the ordinary comforts and conveniences which are reasonably appropriate to parties in their station in life, it should be considered as support and the recipient regarded as a dependent.

In Federal Underwriters Exchange v. Hinkle, (Tex. Civ. App.) 187 S. W. 2d 122, is found a statement appropriate to such a situation: "Support is a very flexible term and includes something more than the bare necessities of life. It includes also the ordinary comforts and conveniences which are reasonably appropriate to the parties' station in life—such as were actually being enjoyed by them at the time of and prior to their son's death."

In the light of the statute and these pronouncements and the facts as disclosed by the record, we are of the opinion that the appellees were at the time of his death dependents of Robert Clyde McKelvey and are entitled to recover compensation under the workmen's compensation law on account of his death on the basis of partial dependency.

Having come to this conclusion it becomes necessary to determine whether or not the district court erred in fixing the amount of the recovery.

In accordance with section 48-122, R. S. Supp., 1949, they are entitled to receive for not to exceed 325 weeks

the proportion of $18 a week that his average contribution from his wages for a reasonable time immediately prior to the accident bore to the total of his wages received.

There was not sufficient continuity of compensated employment before the extended period over which the deceased worked for appellant to make a finding that he made the regular contributions contemplated by the statute. He did work continuously however for the appellant for 6½ weeks. His total wages for the period was as we have computed it $292.59. The average weekly rate as pointed out was $45 a week. What the record discloses as to contributions made has been also pointed out. The evidence in the form and substance indicated came into the record without objection.

In the light of the uncertainty as to whether or not the amount from each pay check was $5 or $10 and the amount for groceries each week was $5 or $10 and in the light of the fact that no exception has been taken to this lack of certainty in these respects, it does not appear that the district court was or this court· is required to regard the one or the other as a finality. It appears a median should be accepted between the two.

We conclude therefore that the contributions in cash were about $7.50 a week and in groceries a like amount or a total of $15 a week. This amount is 33⅓ percent of his average weekly wage. This percentage of $18 a week, the maximum allowable for total disability under the workmen's compensation law, would amount to $6 a week. This is the amount which should be allowed instead of $12 a week which was allowed by the district court. We conclude, since there is no fact or circumstance to reasonably indicate that support would have been withdrawn short of that time, that the award should be for 325 weeks, the maximum length of time under the statute.

The judgment of the district court is affirmed in all respects except as to the amount of the weekly pay-

ments. In this respect it is reversed and the cause remanded with directions to vacate the weekly rate of $12 a week and enter judgment instead at the rate of $6 a week.

AFFIRMED IN PART AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

MESSMORE, J., participating on briefs.